IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES D. CAMINITI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION N0. 09-64J |
| | ) | |
| MICHAEL J. ASTRUE, | ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

GIBSON, J.

### I. SYNOPSIS

This matter comes before the Court on the parties' cross-motions for summary judgment (Doc.

Nos. 16, 18), which have been filed pursuant to Federal Rule of Civil Procedure 56. The Court has

jurisdiction in this case pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the standards applicable

under 42 U.S.C. § 405(g). For the reasons that follow, the Plaintiff's motion for summary judgment

(Doc. No. 16) will be denied, the Defendant's motion for summary judgment (Doc. No. 18) will be

granted, and the decision of the Commissioner of Social Security ("Commissioner") will be affirmed.

### II. PROCEDURAL HISTORY

Plaintiff James D. Caminiti ("Caminiti") applied for supplemental security income ("SSI")

benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f], alleging that

he had become disabled on April 15, 1998. *Caminiti v. Barnhart*, CV-04-206J, Doc. No. 14 at 6. The

1

claim proceeded through the administrative process. A hearing was eventually held before Administrative Law Judge Melvin D. Benitz, who denied the application in a decision dated March 24, 2005. *Id.* at 1, 6. After the Appeals Council denied his request for review, Caminiti sought judicial review pursuant to §§ 405(g) and 1383(c)(3). On July 20, 2005, this Court affirmed the decision of the Commissioner denying Caminiti's SSI application. *Id.*

Caminiti protectively filed the instant application for SSI benefits on September 16, 2004, alleging disability as of April 15, 1998. (R. at 93, 114.) The application was administratively denied on February 3, 2005. (R. at 52.) Caminiti responded on March 15, 2005, by filing a timely request for an administrative hearing. (R. at 60.) On January 9, 2006, a hearing was held in Altoona, Pennsylvania, before Administrative Law Judge Douglas W. Abruzzo (the "ALJ"). (R. at 398.) Caminiti, who was represented by counsel, appeared and testified at the hearing. (R. at 400-31, 440-44.) Mark Heckman ("Heckman"), an impartial vocational expert, also testified at the hearing. (R. at 432-37.) During the course of the hearing, the ALJ informed Caminiti that a consultative psychiatric evaluation would be necessary to facilitate the resolution of his SSI claim. (R. at 430-31.) Dr. Kim Foster evaluated Caminiti on February 9, 2006, pursuant to the ALJ's request. (R. at 276-83.)

In a decision dated June 30, 2006, the ALJ determined that Caminiti was not "disabled" within the meaning of the Act. (R. at 34-46.) Caminiti subsequently filed a request for review with the Appeals Council. (R. at 83.) In an order dated August 2, 2007, the Appeals Council granted the request for review, vacated the ALJ's decision of June 30, 2006, and remanded the case to the ALJ for a new hearing. (R. at 50-51.) The primary reason for this action was a finding by the Appeals Council that the ALJ had not given adequate consideration to the results of Dr. Foster's consultative examination.

2

(R. at 50.) A new hearing was held before the ALJ in Johnstown, Pennsylvania, on January 22, 2008. (R. at 445.) Caminiti again appeared with counsel and testified at the hearing. (R. at 448-69.) The ALJ informed Caminiti that he would have to undergo psychological testing with a consultative medical examiner. (R. at 465-68.) This testing was conducted by Dr. Charles Kennedy on March 4, 2008. (R. at 385-94.)

The ALJ issued a new decision denying Caminiti's application on March 17, 2008. (R. at 11-26.) The Appeals Council denied Caminiti's request for review on January 7, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 6.) Caminiti commenced this action on March 6, 2009, seeking judicial review of the Commissioner's decision. (Doc. Nos. 1-3.) Caminiti and the Commissioner filed motions for summary judgment on October 1, 2009, and November 2, 2009, respectively. These motions are the subject of this memorandum opinion.

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept

3

as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

4

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the

5

administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. THE ALJ'S DECISION[1]

In his decision, the ALJ determined that Caminiti had not engaged in substantial gainful activity subsequent to his protective filing date.[2] (R. at 16.) Caminiti was found to be suffering from status post right knee surgery, degenerative disc disease of the lumbar spine (with disc bulges), an anxiety disorder, a dysthymic disorder, a personality disorder (dependent), schizotypal personality traits, adult attention deficit disorder, fibromyalgia and bronchitis. (R. at 16.) His fibromyalgia and bronchitis were deemed to be "non-severe" within the meaning of 20 C.F.R. § 416.921(a), while his remaining impairments were deemed to be "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii). (R. at 16-17.) The ALJ concluded that Caminiti's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). (R. at 17.)

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Caminiti's residual functional

---

[1] The ALJ made the same findings in his decision of March 17, 2008, that he had previously made in his decision of June 30, 2006. (R. at 11-26, 34-46.)

[2] The denial of Caminiti's first SSI application on March 24, 2004, was deemed to be "final and binding." (R. at 14.)

6

capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), that involves occasional stooping, kneeling or crouching; avoids balancing, crawling or ladders, ropes or scaffolds; affords a sit/stand/walk option that permits the claimant to take four or five steps away from his workstation, during a one minute period, up to five times an hour (for sedentary jobs only); avoids pushing and/or pulling with the lower extremities; avoids prolonged exposure to cold temperature extremes, extreme wetness or humidity; does not involve working around dangerous machinery or unprotected heights; involves no more than simple, routine, repetitive tasks; simple, work related decisions; few work place changes; occasional interaction with supervisors or coworkers; avoids interaction with the public and does not involve working in the field of healthcare.

(R. at 17.)[3]  Caminiti had past relevant work experience as a nurse's aide. (R. at 118.) Heckman

testified that this position was classified as a "semi-skilled,"[4] "medium"[5] job, and that it was frequently

performed at the "heavy"[6] level of exertion. (R. at 432-33.) Because Caminiti was deemed to be

capable of performing only "light" work that involved no more than "simple, routine, repetitive tasks,"

it was determined that he could not return to his past relevant work. (R. at 24.)

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. § 416.968(b).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

[6] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 416.967(d).

7

Caminiti was born on August 1, 1964, making him forty-three years old on the date of the ALJ's decision. (R. at 24, 450.) He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). He had a high school education, two years of education at the collegiate level, and an ability to communicate in English. (R. at 24, 44); 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Caminiti could work as a coupon redemption clerk, a cleaner/housekeeper, an ampoule sealer, a product inspector, or a nut sorter. (R. at 24-25.) Heckman's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[7] (R. at 434-35.)

## V. DISCUSSION

Caminiti raises several arguments in support of his motion for summary judgment. Specifically, he challenges the ALJ's findings at the second, third and fifth steps of the sequential evaluation process. (Doc. No. 17 at 8-16.) His arguments will be addressed in that sequence.

With respect to the second step of the process, Caminiti contends that the ALJ erred in determining that his fibromyalgia and bronchitis were "non-severe" impairments. (Doc. No. 17 at 15.) The United States Court of Appeals for the Third Circuit has referred to the second step as "a *de minimis* screening device" designed to quickly "dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Its purpose is to dispose of any application in which a claimant fails to make a "reasonable threshold showing" that his or her impairment is "one which *could conceivably* keep him or her from working." *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d

---

[7] Heckman's testimony was given at the first hearing of January 9, 2006, rather than at the second hearing of January 22, 2008. (R. at 432-37.)

1118, 1122 (1st Cir. 1986) (emphasis added). The second step "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are *so slight* that it is unlikely [that] they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (emphasis added). Because the second step is relatively easy for a claimant to satisfy, its invocation by an administrative law judge *as a basis for the denial of benefits* "is certain to raise a judicial eyebrow." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004). In this case, however, Caminiti's application was not *denied* at the second step, since he was found to be suffering from other impairments which were deemed to be "severe." (R. at 16-17.)

The ALJ concluded that Caminiti's fibromyalgia and bronchitis were "non-severe" impairments. (R. at 16-17.) Under the Commissioner's regulations, a "non-severe" impairment is defined as an impairment which "does not significantly limit" an individual's "physical or mental ability" to engage in "basic work activities." 20 C.F.R. § 416.921(a). The ALJ stated in his opinion that there was "insufficient evidence to support a finding" that Caminiti's fibromyalgia or bronchitis had imposed limitations on his "ability to perform basic job tasks." (R. at 17.) Caminiti fails to identify a specific functional limitation resulting from his fibromyalgia or bronchitis. (Doc. No. 17 at 15.) In other words, he fails to explain how these impairments adversely affect his ability to engage in "basic work activities." Although the second step of the sequential evaluation process is not a difficult hurdle for a claimant to surmount, a "non-severity" finding made at that step is subject to the same deferential standard of review as that which is applicable to a finding made at any other step of the process. *McCrea*, 370 F.3d at 360-61 ("We do not suggest, however, that a reviewing court should apply a more

9

stringent standard of review in these cases. The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole."). At the second step, the burden is on the claimant to provide information about his or her own medical condition. *Bowen*, 482 U.S. at 146 n.5. Since Caminiti points to no evidence indicating that his fibromyalgia or bronchitis has resulted in work-related limitations lasting for the statutory twelve-month period, the Court has no basis for disturbing the ALJ's determination that these impairments were "non-severe." 20 C.F.R. § 416.922(a).

Even if Caminiti were able to show that the ALJ erred in finding these impairments to be "non-severe," the ALJ's decision could not be set aside solely on that basis. As noted earlier, the evaluation of Caminiti's SSI claim did not end at the second step of the sequential evaluation process, since his remaining impairments were found to be "severe." (R. at 16-17.) Under the Commissioner's regulations, a residual functional capacity assessment must incorporate *all* of a claimant's limitations, including those resulting from "non-severe" impairments. 20 C.F.R. § 416.945(a)(2). For this reason, where at least one impairment is found to be "severe," an erroneous "non-severity" finding with respect to a distinct impairment is inconsequential. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). A remand for further administrative proceedings is not justified where it is clear that an error by an administrative law judge did not impact the administrative decision under review. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Caminiti does not identify a single work-related limitation resulting from his fibromyalgia or bronchitis. (Doc. No. 17 at 15.) Therefore, an affirmance of the Commissioner's decision would be warranted even if Caminiti were able to impugn the ALJ's "non-severity" findings.

10

Caminiti also argues that the ALJ erred in determining that he was not *per se* disabled at the third step of the sequential evaluation process. (Doc. No. 17 at 8-12.) He contends that the ALJ should have found him to be *per se* disabled under Listings 1.00, 12.03, 12.04, 12.06 and 12.08. (Doc. No. 17 at 8.) The Listing of Impairments describes impairments which preclude an individual from engaging in substantial gainful activity without regard to his or her age, education, or past work experience. *Bowen*, 482 U.S. at 153; *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled, a claimant must show that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* The burden is on the claimant to present evidence in support of his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

The United States Court of Appeals for the Third Circuit has held that it is impermissible for an administrative law judge to summarily determine that a claimant's impairments do not meet or medically equal a Listed Impairment without identifying the specific Listing (or Listings) under consideration. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). Nevertheless, an administrative law judge is not required to "use particular language or adhere to a particular format" in conducting his or her analysis. *Jones*, 364 F.3d at 505. In order to impugn an administrative law judge's analysis, a claimant must either identify a Listing that was not (but should have been) considered or point to evidence ignored or overlooked by the administrative law judge that would have

11

warranted a finding of *per se* disability under the Listings that were considered. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007).

The ALJ specifically determined that Caminiti's impairments did not meet or medically equal Listings 1.04, 12.04, 12.06 and 12.08. (R. at 17.) He apparently focused on those particular Listings because Caminiti's counsel had referenced them at the administrative hearing of January 9, 2006. (R. at 439.) Caminiti mentions Listings 1.00 and 12.03 in his brief, but he does not refer to the specific medical criteria applicable thereunder. (Doc. No. 17 at 8-12.) Furthermore, he makes no attempt to explain how he believes that the ALJ erred in rejecting a finding of *per se* disability under Listings 1.04, 12.04, 12.06 and 12.08. (Doc. No. 17 at 8-12.) His argument concerning the ALJ's determination at the third step of the sequential evaluation process is interwoven with a more generalized discussion about the ALJ's residual functional capacity finding. (Doc. No. 17 at 8-12.) This superficial argument constitutes a waiver of the issue. *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D.Colo. 1999). The ALJ's analysis was sufficiently detailed to provide for meaning judicial review. *Poulos*, 474 F.3d at 93; *Jones*, 364 F.3d at 505. Given the inadequacy of Caminiti's argument regarding the issue of *per se* disability, no further discussion of that issue is necessary.

Caminiti's remaining arguments all relate, in one form or another, to the ALJ's residual functional capacity assessment. (Doc. No. 17 at 12-16.) A claimant's residual functional capacity is the most that he or she can do despite the limitations cause by his or her medically determinable impairments. *Pearson v. Barnhart*, 380 F.Supp.2d 496, 505 (D.N.J. 2005); 20 C.F.R. § 416.945(a)(1). Caminiti argues that the ALJ's residual functional capacity determination was deficient because it failed to account for the opinions expressed by some of his treating and examining physicians. (Doc. No. 17

at 12-16.)

The record contains several medical opinions. On January 12, 2005, a non-examining medical consultant opined that Caminiti could engage in a range of light work that involved only occasional climbing and balancing.[8]   (R. at 245-52.)   Dr. Edwin L. Tan performed a consultative psychiatric examination of Caminiti on January 20, 2005. (R. at 237-44.) Based on his examination, Dr. Tan reported that Caminiti was "slightly" limited in his ability to understand, remember and carry out short, simple instructions. (R. at 243.) Caminiti was found to be "moderately" limited in his abilities to understand, remember and carry out detailed instructions, to make judgments concerning simple work-related decisions, to interact appropriately with supervisors, co-workers and members of the general public, and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 243.)

Dr. James Cunningham, a non-examining medical consultant, rendered an opinion regarding Caminiti's mental limitations on January 25, 2005. (R. at 253-66.) According to Dr. Cunningham, Caminiti had only a "mild" degree of limitation with respect to his activities of daily living, his maintenance of social functioning, and his maintenance of concentration, persistence, or pace. (R. at 263.)   Dr. Cunningham indicated that Caminiti had experienced no extended episodes of decompensation. (R. at 263.) Under the Commissioner's regulations, Dr. Cunningham's opinion was tantamount to an opinion that Caminiti had no "severe" mental impairments.   20 C.F.R. § 416.920a(d)(1).

---

[8] The name of this non-examining medical consultant is illegible.  (R. at 252.)

Dr. Kornel Lukacs, a treating physician, described Caminiti's physical limitations in a letter to the Pennsylvania Bureau of Disability Determination dated December 7, 2005. (R. at 268-70.) In that letter, Dr. Lukacs stated:

> There are no details of the range of motion available, although it may be obtained if a formal disability examination is sought. He does have limited range of motion of the lower back which is due to pain. He does have some limitation for weightbearing due to pain. Lifting and carrying probably not more than 10 to 20 pounds frequently, and somewhat more occasionally. Sitting and standing is limited. He has to take breaks, but he probably should be able to sit six hours total, if he is allowed to take breaks. It may be more precisely measured with a work capacity evaluation. He is expected to have difficulty to do postural activities (with the upper extremities, he is not expected to have difficulty). There are no particular environmental restrictions.

(R. at 269-70.) Dr. Lukacs went on to say that a consultative examination may be necessary to further evaluate Caminiti's physical ability to engage in work-related activities. (R. at 270.)

At the administrative hearing held on January 9, 2006, the ALJ told Caminiti that a consultative psychological evaluation would be necessary. (R. at 430-31, 441-43.) This evaluation was conducted by Dr. Foster on February 9, 2006.[9] (R. at 276-83.) On February 15, 2006, Dr. Foster reported that Caminiti was "markedly" limited in his abilities to carry out detailed instructions, to make judgments concerning simple work-related decisions, to interact appropriately with supervisors, co-workers and members of the general public, and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 281.) Caminiti was deemed to be "slightly" limited in his ability to understand and remember short, simple instructions and "moderately" limited in his abilities to carry out short, simple instructions and to understand and remember detailed instructions. (R. at 281.)

_____

[9] Subsequent to the consultative psychological evaluation, Caminiti continued to see Dr. Foster for treatment. (R. at 300.)

Dr. Doo Whan Cho, Caminiti's treating psychiatrist, submitted a "medical source statement" detailing Caminiti's mental capacities on March 2, 2006. (R. at 297-99.) Dr. Cho reported that Caminiti was "markedly" limited in his abilities to carry out detailed instructions, to interact appropriately with supervisors, co-workers and members of the general public, and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 298.) He further indicated that Caminiti was "moderately" limited in his ability to understand and remember detailed instructions and "slightly" limited in his abilities to make judgments concerning simple work-related decisions and to understand, remember and carry out short, simple instructions. (R. at 298.)

Shortly after Dr. Foster evaluated Caminiti's psychological impairments on a consultative basis, she became one of his treating mental health providers. (R. at 300.) On March 29, 2006, Dr. Foster stated that she had discovered schizotypal personality features while counseling Caminiti. (R. at 300.) She declared that Caminiti did "not quite fit in with normal social behavior." (R. at 300.) Dr. Foster further opined that Caminiti had no need to undergo detoxification treatment in connection with his psychotropic and pain medications. (R. at 300.)

The ALJ issued his first decision denying Caminiti's SSI application on June 30, 2006, prompting Caminiti to file a request for review with the Appeals Council. (R. at 34-46.) On August 2, 2007, the Appeals Council granted the request for review, vacated the ALJ's decision, and remanded the case to the ALJ for a new hearing. (R. at 49-51.) The primary basis for this action was the ALJ's failure to adequately consider Dr. Foster's consultative opinion. (R. at 50.) A second hearing was held on January 22, 2008. (R. at 445.) The ALJ informed Caminiti that he would need to undergo psychological testing in order to facilitate the resolution of his SSI claim. (R. at 464-68.)

Dr. Charles Kennedy performed the psychological testing requested by the ALJ, and a consultative psychological evaluation of Caminiti, on March 4, 2008. (R. at 385-94.) Based on his evaluation, Dr. Kennedy reported that Caminiti was "extremely" limited in his abilities to interact appropriately with supervisors, co-workers and members of the general public and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 393.) Dr. Kennedy also found Caminiti to be "moderately" limited in his ability to understand, remember and carry out detailed instructions and "slightly" limited in his abilities to make judgments concerning simple work-related decisions and to understand, remember and carry out short, simple instructions. (R. at 393.)

The psychological test administered by Dr. Kennedy was known as the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2").[10] (R. at 390.) According to Dr. Kennedy's written report, "[t]he MMPI-2 is a standardized self-report questionnaire that assesses a wide range of information related to an individual's personality, emotional adjustment, and attitude toward taking tests." (R. at 390.) Dr. Kennedy also made the following observations about Caminiti's performance on the MMPI-2:

> The client responded to the MMPI-2 items in an extremely exaggerated manner, endorsing a wide variety of rare symptoms and attitudes. The resulting MMPI-2 clinical profile is not a valid indication of the individual's personality and symptoms.
>
> ***
>
> Mr. Caminiti presented fairly different in this evaluation than to Dr. Foster's in February of 2007 in some areas. He does seem to display obsessive-compulsive personality traits, but he also certainly seems to display a paranoid personality pattern. The personality inventory is being completed and will be interpreted. He indicates, "What should I do when I find the trick questions?" Results of the MMPI indicate an invalid profile due

___

[10] Caminiti apparently wanted to complete the MMPI-2 while sitting in his car. R. p. 388. It is not clear whether he actually did so.

to extreme F scores.

(R. at 390.) Dr. Kennedy further reported that the accuracy of the information provided by Caminiti during the course of the psychological evaluation was "questionable." (R. at 389.)

In determining Caminiti's residual functional capacity, the ALJ gave varying degrees of weight to the opinions expressed by all of the treating, examining and non-examining medical sources. (R. at 20-24.) He stated that the results of Caminiti's MMPI-2 had demonstrated a "deliberate attempt" on the part of Caminiti to deceive Dr. Kennedy. (R. at 23.) The ALJ further indicated that Caminiti was "generally unreliable." (R. at 23.)

In his brief, Caminiti assails the ALJ's treatment of Dr. Kennedy's opinion. (Pl.'s Br. 13-14.) Nevertheless, the ALJ had a valid basis for finding that the results of Caminiti's MMPI-2 were unreliable. After all, it was Dr. Kennedy who reported that Caminiti had responded to the MMPI-2 questions "in an extremely exaggerated manner," and that "[t]he resulting MMPI-2 clinical profile [was] not a valid indication of [Caminiti's] personality and symptoms." (R. at 390.) Dr. Kennedy described the results of the MMPI-2 as "invalid" because of Caminiti's "extreme F scores." (R. at 390.) Therefore, the ALJ had a legitimate basis for discounting some of the "extreme" limitations that had been identified by Dr. Kennedy.[11] Moreover, the ALJ did not completely ignore Dr. Kennedy's findings. The ALJ concluded that Caminiti needed to avoid all interaction with members of the general public, which was consistent with Dr. Kennedy's opinion that Caminiti was "extremely" limited in that

---

[11] In determining whether the ALJ's decision is "supported by substantial evidence," the Court can consider only the evidence that was actually before the ALJ at the time of his decision. *Matthews v. Apfel*, 239 F.3d 589, 591-595 (3d Cir. 2001). It is worth noting, however, that in a handwritten letter submitted to the Appeals Council after the issuance of the ALJ's decision, Caminiti declared that he had randomly answered some of the MMPI-2 questions in order to get the test over with. (R. at 397.)

area of functioning. (R. at 17, 393.)

Caminiti contends that the ALJ erred in failing to credit the opinions rendered by Dr. Cho and Dr. Foster concerning his alleged "marked" limitations. (Pl.'s Br. 8-12.) The ALJ afforded "[s]ome weight" to Dr. Cho's opinion because of his status as a treating physician, but he found "serious inconsistencies between ongoing progressive treatment assessments and the earlier opinion of Dr. Foster." (R. at 20, 22.) Caminiti apparently believes that the ALJ's residual functional capacity finding was lacking in evidentiary support because significant weight was not placed on the opinions of Dr. Cho and Dr. Foster. It must be noted, however, that these opinions were not uncontradicted. Dr. Tan, who was himself an examining physician, found Caminiti to have only "slight" and "moderate" limitations. (R. at 243. Moreover, Dr. Cunningham found Caminiti to be only "mildly" limited in the four broad areas of functioning outlined in the Commissioner's regulations, which was indicative of a "non-severe" mental impairment. (R. at 263.)

In determining Caminiti's residual functional capacity, the ALJ accorded "limited weight" to Dr. Tan's assessment and "less weight" to Dr. Cunningham's assessment. (R. at 20-21.) A careful reading of the ALJ's opinion reveals that none of the medical opinions were fully credited or fully discredited. The ALJ's residual functional capacity assessment generally incorporated the limitations which had been identified by Dr. Kennedy and Dr. Foster, albeit to a lesser degree in some instances. For example, the ALJ determined that Caminiti could interact with supervisors and co-workers on only an occasional basis, which determination was partially consistent with the "marked" limitations found by Dr. Foster. (R. at 17, 281.) This determination did indeed constitute a rejection of Dr. Kennedy's opinion that Caminiti was "extremely" limited in his ability to interact appropriately with supervisors

and co-workers. (R. at 393.) The ALJ, however, was not required to credit Dr. Kennedy's opinion in the face of countervailing evidence. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). After all, Dr. Tan had found only "moderate" limitations in the relevant areas of functioning. (R. at 243.) The ALJ did credit Dr. Kennedy's finding that Caminiti was absolutely precluded from interacting with members of the general public. (R. at 17, 393.) The ALJ also concluded that Caminiti needed to work in an environment involving few workplace changes, which was consistent with Dr. Foster's view that Caminiti was "markedly" limited in his ability to respond to changes in a routine work setting. (R. at 17, 281.) Although Dr. Cunningham never examined Caminiti, his opinion that Caminiti suffered from a "non-severe" mental impairment was entitled to some weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). No report submitted by a medical professional may be regarded as "incompetent evidence." *Williams*, 970 F.2d at 1185 n.5. Thus, the countervailing evidence contained in the record was sufficiently probative to justify the ALJ's rejection of some of the "extreme" and "marked" limitations found by Dr. Kennedy and Dr. Foster. This Court must show deference to the ALJ's "evaluation of the evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

Where a claimant has both physical and mental limitations, there is a particularly compelling need for a detailed residual functional capacity assessment. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). Caminiti, of course, has physical limitations as well as mental limitations. The ALJ, however, adequately accounted for these limitations. A non-examining medical consultant opined that Caminiti could engage in a range of "light" work involving only occasional climbing and balancing. (R. at 246-49.) Dr. Lukacs apparently believed that Caminiti could engage in a limited range of

"sedentary"[12] work, provided that he be given the opportunity to take occasional breaks. (R. at 269-70.) The ALJ found Dr. Lukacs' report to be "of little use from an evidentiary standpoint," since Dr. Lukacs had candidly admitted that he could provide no information concerning Caminiti's range of motion. (R. at 21, 269-70.) Although the ALJ's finding that Caminiti was capable of performing "light" work conflicted with Dr. Lukacs' assessment,[13] the ALJ specifically asked Heckman to identify jobs at the "sedentary" level of exertion that were consistent with Caminiti's residual functional capacity.[14] (R. at 434.) The ampoule sealer, product inspector, and nut sorter positions described by Heckman were "sedentary" jobs. (R. at 434-35.) The ALJ accounted for Dr. Lukacs' opinion concerning Caminiti's need for breaks by making the following statements to Heckman:

> If you consider sedentary occupations, they must be compatible with a sit/stand and walk option. I'm defining that as no more than five steps away from the work station, performing a stretching, pain reduction maneuver, returning to the work station within one minute, doing this no more than five times each hour.

(R. at 433.) Caminiti's difficulties with "postural activities," as described by Dr. Lukacs, were reflected

---

[12] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

[13] An opinion provided by a non-examining medical consultant is ordinarily insufficient to overcome a contrary opinion rendered by a treating physician. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008).

[14] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). In order for a vocational expert's answer to a hypothetical question to constitute competent evidence of the existence of jobs consistent with a claimant's residual functional capacity, the administrative law judge's hypothetical question must adequately convey to the vocational expert *all* of the claimant's credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). If a credibly established limitation is not included within the hypothetical question, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Burns v. Barnhart*, 312 F.3d 113, 122-124 (3d Cir. 2002).

20

in the limitations precluding balancing, crawling and the climbing of ropes, ladders and scaffolds, and in the limitations permitting only occasional stooping, kneeling and crouching. (R. at 17, 433.) The ALJ also enumerated additional limitations that had not been previously identified by medical sources. For instance, the ALJ determined that Caminiti could not work "in the field of health care" because of concerns related to the potential abuse of narcotics. (R. at 17, 434, 437-43.) The ALJ's residual functional capacity assessment incorporated all of Caminiti's credibly established limitations. Excluding instances where the ALJ found limitations *exceeding* those which had been identified by medical sources, each and every finding contained within the ALJ's residual functional capacity assessment was supported by the opinion of at least one treating or examining physician.

Caminiti argues that the ALJ failed to properly evaluate Dr. Foster's opinion in accordance with the Appeals Council's remand order. (Pl.'s Br. 14-15.) This argument is without merit. The Appeals Council instructed the ALJ to *consider* Dr. Foster's findings. (R. at 50.) The ALJ was not required to *fully credit* those findings. Dr. Tan, another examining medical source, had found Caminiti to have only "moderate" limitations in the functional areas at issue. (R. at 243.) It was the prerogative of the ALJ to resolve conflicts in the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Of course, the ALJ was not free to *ignore* Dr. Foster's examination report without providing an explanation for discounting it, *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003), which was why the ALJ's first opinion was inadequate to sustain his factual findings. (R. at 50.) The ALJ's second opinion contained a thorough evaluation of Dr. Foster's report. (R. at 21-22.) Consequently, it cannot be said that the ALJ failed to comply with the order which had been rendered by the Appeals Council.

## VI. CONCLUSION

The decision of the Commissioner denying Caminiti's application for SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Accordingly, Caminiti's motion for summary judgment (Doc. No. 16) will be denied, the Commissioner's motion for summary judgment (Doc. No. 18) will be granted, and the administrative decision of the Commissioner will be affirmed. The following Order will issue:

AND NOW, this 11th day of August 2010, this matter coming before the Court on the Plaintiff's Motion for Summary Judgment (Doc. No. 16) and Defendant's Motion for Summary Judgment (Doc. No. 18), **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. In accordance with the applicable provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3), the decision of the Commissioner of Social Security is hereby **AFFIRMED**.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:    All counsel of record